IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES,<br>  *Plaintiff*,<br><br>v.<br><br>TYRONE CLARK,<br>  *Defendant*. | )<br>)<br>)<br>) Case No. PX-91-0310<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR REDUCED SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)

  Tyrone Clark, through undersigned counsel, respectfully moves this Court to grant his motion for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A)(i) based on the "extraordinary and compelling reasons" presented here. Mr. Clark has served 95% of his 35-year sentence and is fewer than 16 months from his anticipated release. He is 52 years old, diabetic, and suffers from hypertension, conditions that make him particularly susceptible to suffering serious, and possibly fatal, complications if he contracts COVID-19 while in Bureau of Prisons custody. Mr. Clark asks that this Court issue an order reducing his sentence to time served, as it has recently done for other medically-vulnerable inmates facing potential complications from the disease. *See United States v. Gardner*, Crim. No. JKB-09-0619, ECF No. 72 (D. Md. May 27, 2020); *United States v. Wise*, Crim. No. ELH-18-072, 2020 WL 2614816 (D. Md. May 22, 2020); *United States v. Gutman*, Crim. No. RDB-19-069, 2020 WL 2467435 (D. Md. May 13, 2020); *United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674 (D. Md. Apr. 28, 2020); *United States v. Winston*, Crim. No. RDB-13-0639, ECF No. 294 (D. Md. Apr. 28, 2020).

1

## STATEMENT OF FACTS

Tyrone Clark was convicted following a jury trial of: (i) conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846 (one count); (ii) possession with intent to distribute heroin, in violation of 21 U.S.C. § 841 (one count); (iii) use of a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (two counts); and (iv) possession of a firearm following a felony conviction, in violation of 18 U.S.C. § 922(g) (one count). At a sentencing hearing held on July 2, 1992, the Court sentenced Mr. Clark to 480 months' imprisonment and a 10-year term of supervised release. The sentence consisted of a 360-month term (the low end of the then-mandatory guideline range for the conspiracy offense), and consecutive 60-month terms for the two firearm offenses under § 924(c).

On November 14, 1997, this Court granted in part Mr. Clark's motion for relief under 28 U.S.C. § 2255. The Court vacated one of his convictions for using a firearm in relation to a drug trafficking offense under § 924(c), which mandated a consecutive 60-month term. Dkt. Nos. 162, 163 (memorandum opinion and order). At a resentencing hearing held on November 19, 1997, the Court reduced Mr. Clark's sentence to 420 months. Dkt. No. 164 (amended judgment). The sentence consisted of a 360-month term (the low end of the mandatory guideline range for the conspiracy) and a consecutive 60-month term for the single firearm offense under § 924(c).

Mr. Clark has been in federal custody since his arrest on September 26, 1991. He has spent his time productively, learnings marketable skills, taking classes, working, practicing his faith, and most recently, completing an 18-month "Life Connections" program. BOP Program Review (attached as Exhibit A). As of June 10,

2020, Mr. Clark has been incarcerated for approximately 347 months (nearly 29 years), which amounts to more than 95% of his 35-year sentence.[1] BOP Inmate Data (attached as Exhibit B), at 3. His anticipated release date is September 28, 2021.

Mr. Clark filed a request for a reduction in sentence with the warden of USP Leavenworth on April 17, 2020. Request for Reduction in Sentence (attached as Exhibit C). Because more than thirty days have passed since the warden received the request, Mr. Clark can petition this Court for relief pursuant to 18 U.S.C. § 3582(c)(1)(A). *See United States v. Mel*, No. TDC-18-0571, 2020 WL 2041674, at *1 (D. Md. Apr. 28, 2020).

**ARGUMENT**

Courts may grant compassionate release if they determine "extraordinary and compelling reasons" justify relief. 18 U.S.C. § 3582(c)(1)(A)(i). Following the First Step Act, which modified the compassionate release statute, courts' assessments are no longer limited to the criteria developed by either the BOP or the Sentencing Commission. *See* Bureau of Prisons Policy Statement § 5050.50; U.S.S.G. § 1B1.13. Rather, courts can determine whether reasons "other than, or in combination with" the traditional criteria (age, medical condition, or family circumstances) warrant a reduced sentence. U.S.S.G. § 1B1.13, app. n.1(D).

The circumstances presented in this case, including Mr. Clark's underlying medical conditions (including diabetes and hypertension), which render him

---

[1] Pursuant to 18 U.S.C. § 3624(b)(1), as amended by the First Step Act, inmates earn up to 54 days of good-conduct time each year. An inmate sentenced to a 420-month term who accrues the maximum amount of available good-conduct time will serve an actual sentence of 357 months, which is roughly 30 years.

3

susceptible to falling gravely ill from COVID-19, constitute extraordinary and compelling reasons for relief under § 3582(c). After balancing the relevant sentencing factors under 18 U.S.C. § 3553(a), including Mr. Clark's rehabilitative progress during nearly three decades of incarceration, his maintenance of a perfect disciplinary record over the past five years, the improbability he will recidivate, and the availability of a stable release plan and community support, this Court should reduce his sentence to time served.

## I. The First Step Act Empowered Courts to Determine When "Extraordinary and Compelling Reasons" Warrant Relief Under § 3582(c)

In December 2018, the President signed into law the First Step Act, which, among other things, made significant changes to the statute governing compassionate release, 18 U.S.C. § 3582(c)(1)(A)(i). The statute was first enacted in 1983 to serve as a "safety valve" to enable judges to assess whether a sentence reduction was warranted by "extraordinary and compelling reasons." S. Rep. No. 98-225, at 121 (1983); 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission ("Commission") the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t). In 2007, more than two decades later, the Commission responded by issuing a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, comm. n.1(A).

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the Bureau of Prisons. But during the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met

4

the eligibility criteria.[2] In 2013, the Office of the Inspector General for the Department of Justice concluded, "The BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at *https://oig.justice.gov/reports/2013/e1306.pdf*.[3]

Through the First Step Act, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). The statute, as amended, now authorizes courts to grant relief whenever "extraordinary and compelling reasons" warrant a reduction, consistent with the

---

[2] *See, e.g.*, *United States v. Brown*, 411 F. Supp. 3d 446, 450-51 (S.D. Iowa Oct. 8, 2019) ("Until 2013, on average, 'only [twenty-four] inmates were released each year' through the BOP Program.") (quoting *Hearing on Compassionate Release and the Conditions of Supervision before the U.S. Sentencing Comm'n* (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice)); *see also The Answer is No: Too Little Compassionate Release in US Federal Prisons*, Human Rights Watch, (Nov. 2012) ("Although we do not know how many prisoners have asked the BOP to make motions on their behalf—because the BOP does not keep such records—we do know the BOP rarely does so. The federal prison system houses over 218,000 prisoners, yet in 2011, the BOP filed only 30 motions for early release, and between January 1 and November 15, 2012, it filed 37.").

[3] *See also* Dep't of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at *https://oig.justice.gov/reports/2015/e1505.pdf#page=1* ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population, few aging inmates have been released under it."); U.S.S.G. § 1B1.13, n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates).

sentencing factors outlined in 18 U.S.C. § 3553(a) and applicable policy statements issued by the Commission—regardless of the BOP's position.[4]

Thus, courts no longer need to await a motion by the BOP to consider a defendant for compassionate release. They "may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, Crim. No. CCB-95-0202, 2020 WL 1676219, *appeal noted* (D. Md. Apr. 6, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI,

---

[4] The Sentencing Commission's policy statement makes clear that extraordinary and compelling reasons are not restricted to finite circumstances. The policy statement identifies four categories of extraordinary and compelling reasons, including age, medical reasons, family circumstances, and a catchall provision. *See* U.S.S.G. § 1B1.13, app. n.1. The catchall provision, entitled "Other Reasons," broadly encompasses "an extraordinary and compelling reason other than, or in combination with" a person's age, medical condition, or family circumstances. *Id.* at 1(D). While the catchall provision contemplates that such other reasons be determined by the Director of the Bureau of Prisons, the policy statement's deference to the Bureau of Prisons cannot be reconciled with the text and purpose of the amended statute, which "trumps the Guidelines." *Dorsey v. United States*, 567 U.S. 260, 266 (2012). Indeed, the Commission has not updated § 1B1.13 since the enactment of the First Step Act because it lacks the quorum necessary to amend the guidelines. *See United States v. Cantu-Rivera*, No. H-89-204, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019). Accordingly, the portions of the policy statement limiting "extraordinary and compelling" reasons to criteria identified by the Director of the BOP "no longer explain an appropriate use" of § 3582(c)(1)(A) and must be read out, as they conflict with the statute. *See, e.g.*, *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3-4 (S.D. Tex. June 17, 2019); *see also United States v. Ebbers*, 2020 WL 91399, at *4 n.6 (S.D.N.Y. Jan. 8, 2020) ("[T]he First Step Act reduced the BOP's control over compassionate release and vested greater discretion with courts. Deferring to the BOP would seem to frustrate that purpose.").

§ 603(b), Dec. 21, 2018, 132 Stat. 5239); *United States v. Bryant*, Crim. No. CCB-95-0202, Dkt. No. 373 (D. Md. Apr. 30, 2020).

Likewise, courts are no longer constrained by the BOP's criteria for determining when relief is warranted. *See, e.g.*, *United States v. Cantu*, 2019 WL 2498923, at *3-4 (S.D. Tex. June 17, 2019) (vesting BOP with authority to determine whether extraordinary and compelling reasons are present "no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court"); *United States v. Ebbers*, 2020 WL 91399, at *4 n.6 (S.D.N.Y. Jan. 8, 2020) ("[T]he First Step Act reduced the BOP's control over compassionate release and vested greater discretion with courts. Deferring to the BOP would seem to frustrate that purpose."). Indeed, this Court, quoting *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020), has explained that

> [a]pplication Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance, particularly since it would be unlikely that the BOP Director would determine that an extraordinary and compelling reason exists under Application Note 1(D) but then decline to file a motion for compassionate release based on that determination.

*Decator*, 2020 WL 1676219, at *2. Thus, "[w]hile Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *Id.* at *3 (citation omitted); *see United States v. Bryant*, Crim. No. CCB-95-0202, Dkt. No. 373.

Numerous courts are in accord with this Court's rulings in *Decator* and *Bryant*. *See, e.g.*, *United States v. McPherson*, No. 94-cr-05708-RJB, ECF No. 209 (W.D. Wash. Apr. 14, 2020); *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *15 (S.D.N.Y. Apr. 6, 2020); *United States v. Owens*, No. 97-CR-2546-CAB, ECF No. 93 at 4 (S.D. Cal. Mar. 20, 2020); *United States v. Redd*, No. 1:97-cr-0006-AJT, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020); *United States v. Perez*, No. 88-10094-JTM, 2020 WL 1180719, at *2 (D. Kansas Mar. 11, 2020); *United States v. Young*, No. 2:00-cr-0002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kansas Feb. 21, 2020); *United States v. Maumau*, No. 2:08-cr-0758-TC, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020); *United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8. 2020); *United States v. Valdez*, No. 3:98-cr-0133-01-HRH, 2019 WL 7373023, at *2 (D. Alaska Dec. 31, 2019); *United States v. Rodriguez*, No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); *United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *2 (N.D. Ohio Oct. 17, 2019); *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5-6, 8-9 (M.D.N.C. June 28, 2019); *United States v. Cantu-Rivera*, No. H-89-204, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019); and *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019).

**II. Tyrone Clark Presents Extraordinary and Compelling Reasons for Relief Because His Diabetes and Hypertension Diagnoses Place Him at High Risk of Suffering Grave Complications From COVID-19**

This Court should find that extraordinary and compelling reasons justify granting compassionate relief because Mr. Clark's underlying medical conditions—particularly his diabetes and hypertension—place him at an unreasonably high risk of falling seriously, even gravely, ill from COVID-19 while he serves the last 5% of his 35-year sentence.

> A. <u>This Court Is Authorized to Determine Whether a Person's Vulnerability to COVID-19 Presents "Extraordinary and Compelling" Reasons to Grant Compassionate Release</u>

This Court already has determined that it is authorized to define what constitutes "extraordinary and compelling reasons" for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). It also has found that the risks posed by the COVID-19 pandemic to persons with underlying medical conditions may present such extraordinary and compelling reasons for relief. In *United States v. Mel*, for example, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25% to 40% chance of malignancy. While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to becoming severely ill from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak,

9

she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3.

In *United States v. Gutman*, Judge Bennett found that the defendant's "underlying medical conditions, combined with his increasing risk of exposure to COVID-19, presented extraordinary and compelling reasons for his release from confinement." 2020 WL 2467435, at *2. And in *United States v. Winston*, Judge Bennett found that the defendant's "grave medical condition" alone constituted "extraordinary and compelling reasons" for relief, adding that "COVID-19 poses additional risks to Mr. Winston." No. RDB-13-639, ECF No. 294 at 5. He noted that "similar conditions at other prisons have led United States District Courts across the nation to grant compassionate release to certain defendants who have medical issues similar to Mr. Winston's conditions." *Id.* (citing cases).

In *United States v. Wise*, Judge Hollander concluded that the defendant's "poor health and age, which make him especially susceptible to COVID-19, provide a compelling basis to modify his sentence." 2020 WL 2614816, at *7. Notably, Judge Hollander granted relief over the government's objection, which was based on the absence of any positive cases where the defendant was housed. Stating "it would be pollyannaish to believe that Allenwood FCI will escape this pandemic unscathed," the Court concluded that COVID-19 "presents a significant threat to Wise and other inmates at Allenwood FCI who have serious underlying health issues." *Id.*

Most recently, in *United States v. Gardner*, Judge Bredar granted compassionate release "in light of the risks posed to [Mr. Gardner] by COVID-19 due

to his high blood pressure and 'chronic bronchitis.'" No. JKB-09-0619, ECF No. 72 at 2; *id.* at 4 ("Gardner's health conditions make him uniquely vulnerable to serious complications from COVID-19 and create an extraordinary and compelling reason for compassionate release under § 3582(c)(1)(A)(i).").

District courts throughout the country have reached the same conclusion in comparable cases. *See, e.g.*, *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *3 (E.D. Va. May 6, 2020) ("The Court finds that Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person of his age with underlying health conditions."); *United States v. Quintero*, No. 08-cr-6007L, 2020 WL 2175171 (W.D.N.Y. May 6, 2020) (granting compassionate release to man who "suffers from diabetes, a compromised immune system, obesity, and hypertension," "which make him more susceptible than another to contract the virus."); *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *1 (D. Mass. May 4, 2020) (holding that for the 54-year-old defendant who suffers from "diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis" "nothing could be more extraordinary and compelling than this pandemic"); *United States v. Echevarria,* No. 3:17-cr-44 (MPS), 2020 WL 2113604 (D Conn. May 4, 2020) (finding 49-year-old with pre-existing respiratory condition—a history of bronchial asthma—combined with the increased risk of COVID-19 in prisons had demonstrated extraordinary and compelling reasons for relief); *United States v. Early*, No. 09 CR 282, 2020 WL 2112371, at *2 (N.D. Ill. May 4, 2020) ("the Court cannot discount the risk to Mr. Early if he contracts coronavirus, as reliable information places him in a

higher-risk category [62, diabetes and hypertension]. This, in the Court's view, qualifies as an extraordinary reason warranting consideration of a reduction of Mr. Early's sentence."); *United States v. Soto*, No. 1:18-cr-10086-IT, 2020 WL 2104787 (D. Mass. May 1, 2020) (finding inmate with hypertension at facility with COVID-19 cases located in New York had shown extraordinary and compelling reasons for relief); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to inmate who had served 19 years of 24-year sentence based on his vulnerability to COVID-19 because of hypertension, prostate issues, bladder issues, and a dental infection and because he is prediabetic); *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020) (granting immediate release for individual with asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma in light of presence of COVID-19 at place of imprisonment).

> B. <u>Mr. Clark, Who is 52, Diabetic, and Has a History of Hypertension, is at High Risk of Suffering Complications From COVID-19</u>

The Centers for Disease Control have identified several factors that place certain individuals at higher risk of suffering severe – even fatal – complications from COVID-19. "Based on currently available information and clinical expertise, older adults and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19." CDC, People Who Are at Higher Risk for Severe Illness, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html*. In one clinical study, "those at highest risk for severe disease and death included" individuals with "hypertension, diabetes,

cardiovascular disease, chronic respiratory disease and cancer." Robert Verity, et al., *Estimates of the severity of COVID-19 disease*, *https://www.researchgate.net/publication/339924190_Estimates_of_the_severity_of_COVID-19_disease*.

Similarly, a recent study published in the Journal of the American Medical Association (JAMA) found that among 5700 patients in New York City who were hospitalized with COVID-19, the most common underlying medical conditions were hypertension (56.6 percent), obesity (41.7 percent) and diabetes (33.8 percent). Safiya Richardson et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area,* JAMA, available at *https://jamanetwork.com/journals/jama/fullarticle/2765184*. In fact, as Judge Chuang noted in a recent opinion ordering the release of a defendant from the Central Treatment Facility in Washington, D.C., "as of March 2020, three-fourths of individuals who died from COVID-19 in Italy had hypertension." *United States v. Keaton*, No. TDC-18-0215, ECF No. 84 at *5 (D. Md. Apr. 23, 2020) (citing *Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 1663133, at * 1 (D. Md. Apr. 3, 2020).

Based on these criteria, Mr. Clark clearly falls into the "high risk" category for COVID-19 because he suffers from both diabetes and hypertension. BOP Medical Records (attached as Exhibit D).

**COVID-19 Fatality Rate by COMORBIDITY**[5]

| PRE-EXISTING CONDITION | DEATH RATE confirmed cases | DEATH RATE all cases |
|---|---|---|
| **Cardiovascular disease** | 13.2% | 10.5% |
| **Diabetes** | 9.2% | 7.3% |
| **Chronic respiratory disease** | 8.0% | 6.3% |
| **Hypertension** | 8.4% | 6.0% |
| **Cancer** | 7.6% | 5.6% |
| *No pre-existing conditions* | | 0.9% |

Additionally, while Mr. Clark is not yet 65 years old, his age still places him at a higher risk of falling gravely ill from COVID-19. According to Dr. Chris Beyrer, a professor of epidemiology at Johns Hopkins Bloomberg School of Public Health, the risk of fatality from the disease rises significantly in those *over age 50*: "The case fatality rate is higher in men, and varies significantly with advancing age, rising after age 50, and above 5% (1 in 20 cases) for those with pre-existing medical conditions including cardio-vascular disease, respiratory disease, diabetes, and immune compromise." Declaration of Chris Beyrer (attached as Exhibit E), at ¶6.

---

[5] *https://www.worldometers.info/coronavirus/coronavirus-age-sex-demographics/*.

Mr. Clark asks this Court to find that the risk the COVID-19 pandemic poses to his health—and possibly even his life—constitutes an "extraordinary and compelling reason" to grant him compassionate release.

C. <u>The § 3553(a) Factors Weigh in Favor of Reducing Mr. Clark's Sentence to Time-Served</u>

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors in 18 U.S.C. §3553(a) to determine whether a reduction or modification is warranted. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Clark's rehabilitative progress, his reliable release plan, the improbability he will recidivate, and the percentage of his sentence he has already served, when combined with the other § 3553(a) factors, clearly warrant relief.

1. *Mr. Clark has undergone successful rehabilitation*

Mr. Clark has worked diligently to reinvent himself and demonstrate his commitment to becoming a productive member of society. Over the last decade alone, he has learned marketable trades (including commercial driving and carpentry); he has taken dozens of academic and self-improvement courses on topics such as money management, fitness, spirituality, conflict management, and parenting. BOP Progress Report, at 1-2. He has maintained a work detail as the chaplain office clerk. *Id.* And he has completed an intensive 18-month faith-based program called "Life Connections" that was designed to ease his reentry into the community. *Id.* ("Clark arrived at USP Leavenworth, KS, on June 27, 2018, to participate in the faith based Life Connections Program. He successfully completed the program on May 1, 2020.")

15

Mr. Clark also has maintained a positive behavioral record, showing marked improvement during the last decade—and especially during the last five years, during which time his disciplinary record has been unblemished. BOP Discipline Data (attached as Exhibit F). Though Mr. Clark received citations during his early incarceration, the majority were for minor infractions; in fact, the only serious citation he received (for possessing drugs or drug paraphernalia) was in 1997, more than 20 years ago. *Id.* at 3; *see id.* ("Clark has maintained clear conduct since September 2015. He has not received an incident report at USP Leavenworth, KS. His interaction with staff and inmates is appropriate and no management concerns are noted at this time.").

        2.    *Mr. Clark, who is in his early 50's, is unlikely to reoffend*

Mr. Clark was in his early 20's when he committed the offenses for which he is incarcerated. As a young adult, Mr. Clark was immature, impulsive, and susceptible to negative influences. *See Roper v. Simmons*, 543 U.S. 551 (2005) (citing studies showing that the prefrontal lobe of the human brain, which controls judgment and decision-making, is not fully developed until a person reaches his mid-20's).

Today, Mr. Clark is a 52-year-old man. And, as this Court is well aware, the likelihood of recidivism declines sharply with age. According to a March 2016 report by the U.S. Sentencing Commission, people who are released from incarceration before the age of 21 have the highest recidivism rate (67.6%), while those released after age 60 have the lowest recidivism rate (16.0%). As a man in his 50's, Mr. Clark is among the group with the second-lowest recidivism rate (24.7%). U.S. Sent'g Comm'n, Recidivism Among Federal Offenders: A Comprehensive Overview, March

2016, at 23, *https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research - publications/2016/recidivism_overview.pdf.*

Setting statistics aside, there are other reasons to conclude that Mr. Clark poses little risk of recidivism. For one, his record demonstrates his commitment to rehabilitation and his devotion to his faith—as evidenced by his work with the prison chaplain and his completion of the faith-based "Life Connections" program over the past year and a half. Additionally, because Mr. Clark already has spent more than half his life behind bars, he is resolute in his determination to never return.

### 3. *Mr. Clark has a reliable release plan and support network*

Upon his release, Mr. Clark plans to reside with his girlfriend, Tamika Dorsey, in Edgewood, Maryland. BOP Progress Report, at 4. In addition, Mr. Clark has a supportive network of family and friends who are eager to assist him re-acclimate to the community.

### 4. *A reduced sentence will promote respect for the law and avoid unwarranted sentencing disparities*

Mr. Clark's 35-year term is a remnant from a different sentencing era. It preceded watershed changes in criminal law that returned sentencing discretion to Article III judges, where it belongs. And it stands as a stark reminder of this country's failed "war on drugs," which routinely resulted in the imposition of harsher sentences for drug offenses than violent crimes. *See* U.S. Sent'g Comm'n, 2017 Sourcebook of Federal Sentencing Statistics, Table 14 (stating that average prison sentence imposed nationally for murder in federal court is approximately 18.1 years for all

17

offenders; for first-time offenders, the average sentence is even lower, about 15.6 years).[6]

Indeed, district courts, including this Court, have routinely imposed shorter sentences on defendants whose crimes were far worse than Mr. Clark's. In *United States v. Floyd*, this Court sentenced the defendant, who was convicted after a jury trial of joining a racketeering conspiracy responsible for murder, to 30 years' incarceration. Crim. No. CCB-16-0597, Dkt. No. 691. In the same case, this Court sentenced another defendant, who admitted to participating in a murder so that he could join a violent drug-trafficking organization in West Baltimore, to 25 years' incarceration (a term later reduced to slightly less than 24 years). Crim. No. CCB-16-0597, Dkt. No. 368. Other co-defendants who were members of an organization responsible for eight murders received sentences ranging between 25 and 35 years, even though each faced a maximum possible sentence of life.

In another relatively recent case, this Court sentenced a defendant who admitted to firing multiple gunshots into an occupied vehicle (ending, tragically, in the striking and killing of a three-year-old child) to 25 years' incarceration. *United States v. Plummer*, Crim. No. GLR-17-0223, Dkt. No. 460; *see United States v. Alewine et al.*, Crim. No. GLR-16-0453 (sentencing defendants who admitted to multiple shootings to terms of 25 years or less); *United States v. Martinez-Aguilar*, Crim. No. JKB-17-0589, Dkt. No. 109 (sentencing defendant, who admitted to being member of violent MS-13 gang and attempting to kill two individuals, to 24 years' incarceration);

---

[6] Available at *https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2017/Table14.pdf*.

*United States v. Hunter*, Crim. No. JKB-16-0363, Dkt. No. 288 (sentencing defendant who admitted to killing individual to nearly 27 years' incarceration); *United States v. Molina-Valldarez et al.*, Crim. No. RWT-09-0471, Dkt. Nos. 240, 249 (sentencing defendants who either participated or aided and abetted in gang-related killings to between 22 and 24½ years' incarceration).

As these cases demonstrate, reducing Mr. Clark's punishment to time-served here—which would approximate a 400-month (instead of a 420-month) sentence—will neither diminish the seriousness of his offenses nor place the public in any danger. Rather, it is likely to promote respect for the law by reducing unwarranted disparities born of since-rejected sentencing practices.

## CONCLUSION

For the foregoing reasons, Tyrone Clark has presented extraordinary and compelling reasons for compassionate release and asks this Court to reduce his sentence to time served.

Respectfully submitted,

JAMES WYDA
Federal Public Defender
for the District of Maryland

 */s/ Sapna Mirchandani*
Sapna Mirchandani
Assistant Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600
*Sapna_Mirchandani@fd.org*

## CERTIFICATE OF SERVICE

This is to certify that on June 10, 2020, the foregoing Memorandum in Support of Emergency Motion for Reduced Sentence Under 18 U.S.C. § 3582(c) was filed via CM/ECF, and that copies of the same were electronically delivered to the following parties:

David I. Salem
Ellen E. Nazmy
Jonathan S. Tsuei
Office of the U.S. Attorney
6406 Ivy Lane, Suite 800
Greenbelt, MD 20770

                                          */s/ Sapna Mirchandani*
                                          Sapna Mirchandani